UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL CATALANO,

    Plaintiff,

v.

COUNTY OF STARKE, STARKE
COUNTY COMMUNITY CORRECTIONS,
and OFFICER RONALD DUFF, in his
personal capacity and as employee/agent of
Starke County,

    Defendants.

CAUSE NO. 3:24cv170 DRL-SJF

## OPINION AND ORDER

On October 4, 2024, Michael Catalano filed a second amended complaint against Starke County Community Corrections (SCCC), Starke County, and Officer Ronald Duff. He alleges violations of the Eighth Amendment to the United States Constitution and state law battery claims arising out of incidents on June 7, 2023. The defendants move to dismiss all claims against Starke County, all claims against SCCC, and the state law battery claims against Officer Duff under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The court grants the motion only in part.

## BACKGROUND

These facts emerge from the second amended complaint, taking the well-pleaded allegations and reasonable inferences in Mr. Catalano's favor. On January 9, 2023, Mr. Catalano went to the emergency room at Northwest Health with complaints of pancreatitis, splenic vein thrombosis, and alcohol withdrawal [20 ¶ 9]. The next day, he was transported to another medical campus, where he spent two weeks and suffered bedsores on his ankles [*id.* ¶ 10-11].

These seem to have persisted. More than a month later, on February 22, 2023, LaPorte County needed to implement electronic monitoring (an ankle monitor) but remained concerned about the bedsores on his right ankle. The county placed the monitor on his left leg instead [*id.* ¶ 15-16]. From all indications, this was uneventful.

Not until June 7, 2023, when Mr. Catalano was being transferred to SCCC and a larger monitor was needed, did he express concerns. He warned SCCC (namely Officer Duff) that the bedsores on his right ankle posed a health risk for a monitor on that leg and asked if the monitor could be moved to his left ankle [*id.* ¶ 20]. Officer Duff declined to consider its placement on the left ankle and, as alleged, ignored the obvious medical issues [*id.* ¶ 17-19, 20-21].

On June 19, 2023, Mr. Catalano returned home from work early due to an illness [*id.* ¶ 22]. His spouse, Allison Catalano, noticed that his leg had "greatly swollen" [*id.*]. She drove Mr. Catalano to the emergency room, where medical staff advised that the ankle monitor should be removed due to an infection [*id.* ¶ 23]. An SCCC officer was contacted and subsequently approved a monitor on Mr. Catalano's arm [*id.* ¶ 24]. Dr. Kathleen Starr told the Catalanos that the monitor's placement made it rub against a bedsore, causing the infection [*id.* ¶ 25].

Before his injury, Mr. Catalano's primary work was automobile bodywork, and the infection caused him to miss roughly three weeks [*id.* ¶ 26, 28]. Even today, he continues to suffer from pain and reduced mobility in his right leg, which limits his ability to work in his trained profession [*id.* ¶ 27-28]. He says he also developed septicemia, cellulitis, necrosis of pancreatic tissue, and kidney damage [*id.* ¶ 26-27].

Mr. Catalano alleges that Starke County failed to implement policies addressing how officers should handle obvious medical conditions both as a general matter and specifically in the

placement of monitoring devices [*id.* ¶ 34-35]. He also says Starke County adopted unwritten policies of ignoring medical conditions in the placement of monitoring devices and allowing officers without medical training to make medical decisions [*id.* ¶ 38]. He alleges that, through policy, Officer Duff refused to acknowledge Mr. Catalano's voiced concerns about the bedsores on his right leg [*id.* ¶ 40], all derivative of a culture that encouraged or permitted a failure to treat medical conditions of inmates or supervisees [*id.* ¶ 43].

The defendants filed a partial motion to dismiss—all claims against Starke County, all claims against SCCC, and only the state law battery claim against Officer Duff. For now, they don't contest the Eighth Amendment claim against Officer Duff. Mr. Catalano doesn't address SCCC's argument, but he argues that the *Monell* and battery claims should remain.

## STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations," *id.*, but "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [a] presumption of truth," *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). A claim must be plausible, not probable. *Indep. Tr. Corp. v. Steward Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is

3

"a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley*, 671 F.3d at 616 (quotation and citation omitted).

## DISCUSSION

A. *Starke County Community Corrections (SCCC).*

SCCC isn't a suable entity—it isn't a "person" or policymaking body that can be sued for constitutional violations under 42 U.S.C. § 1983. *See, e.g., Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011); *Fain v. Wayne Cnty. Auditor's Off.*, 388 F.3d 257, 261 (7th Cir. 2004). Mr. Catalano never defends his pleading to argue that SCCC qualifies under the law, so he effectively abandons or forfeits this claim. *See Boogaard v. Nat'l Hockey League*, 891 F.3d 289, 295 (7th Cir. 2018).

Local government liability depends on state law, *McMillian v. Monroe Cnty.*, 520 U.S. 781, 786 (1997), and local government departments such as SCCC are not entities that may be sued under Indiana law, *Hoosier Mountain Bike Ass'n, Inc. v. Kaler*, 73 N.E.3d 712, 714 n.3 (Ind. Ct. App. 2017); *City of Peru v. Lewis*, 950 N.E.2d 1, 4 (Ind. Ct. App. 2011). SCCC is a department within Starke County and merely a vehicle through which Starke County fulfills its policy functions. *Lewis*, 950 N.E.2d at 4 (citing *Slay v. Marion Cnty. Sheriff's Dep't*, 603 N.E.2d 877, 887 (Ind. Ct. App. 1997)). The court thus must dismiss all claims against SCCC.

B. *Starke County (Monell Claim).*

Mr. Catalano alleges violations of his constitutional rights under 42 U.S.C. § 1983. Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To establish a § 1983 claim, he must show that he

was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

The county can only be held liable under § 1983 if "execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Mr. Catalano must plead facts that plausibly show that (1) he suffered a deprivation of a federal right (2) as a result of an express policy, a widespread custom, or a deliberate act of a decisionmaker with final policymaking authority for the county (3) that was the cause (moving force) of his injury and (4) that exhibits municipal fault. *See Stewardson v. Titus*, 126 F.4th 1264, 1279 (7th Cir. 2025); *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023); *First Midwest Bank v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021); *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014).

The official policy requirement distinguishes the county's acts from the acts of its employees, and thereby ensures that the county's liability "is limited to action for which [it] is actually responsible.'" *Est. of Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). Mr. Catalano must establish an express policy, a widespread custom, or a deliberate act of a decisionmaker with final policymaking authority. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). To establish a policy or custom within the meaning of *Monell*, he must show a "specific pattern or series of incidents that support the general allegation of a custom or policy." *Hollins v. City of Milwaukee*, 574 F.3d 822, 827 (7th Cir. 2009). He typically "must show more than the deficiencies specific to his own experience." *Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016).

*Monell* liability based on a failure to train theory can only occur when the failure amounts to deliberate indifference. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). In this context, that is what it means to illustrate municipal fault. When a municipality acts or directs an employee to act in a way that facially violates a federal right, municipal fault may be easily established; whereas when a plaintiff alleges that a municipality has not directly violated a right but caused or induced an employee to do so, then a plaintiff must plausibly allege the municipality's deliberate indifference. *First Midwest Bank*, 988 F.3d at 986-87. To demonstrate deliberate indifference, a "pattern of similar constitutional violations by untrained employees is ordinarily necessary," *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quotations omitted), though "a single violation can suffice [when] a violation occurs and the plaintiff asserts a recurring, obvious risk," *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021).

Mr. Catalano pleads *Monell* claims against Starke County under two theories. First, he says Starke County's failure to develop appropriate policies constitutes a widespread practice or custom sufficient to support § 1983 municipal liability. Second, he contends that Starke County's failure to train its employees amounted to deliberate indifference toward individuals with whom county employees interact for ankle monitoring. Mr. Catalano pleads no express policy and no deliberate act. For either claim to proceed, therefore, Mr. Catalano must plead facts that plausibly suggest another basis for municipal liability—for instance, a widespread custom or deliberate indifference to a recurring situation caused the violation of his constitutional rights. *See id.*

To permit a *Monell* claim to proceed based on either theory would effectively sanction such a claim based solely on the single act of alleged deliberate indifference by an officer—thereby never plausibly distinguishing the officer's act from the county's act. *See Est. of Sims*, 506 F.3d at

6

515. On this pleading, Mr. Catalano would seek to impute the officer's one-time deliberate indifference to the county, but vicarious liability doesn't exist under § 1983 as a matter of law. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). Mr. Catalano fails to allege a pattern or series of incidents to support a plausible custom or policy outside of his experience, much less one widespread. *See Daniel*, 833 F.3d at 734; *Hollins*, 574 F.3d at 827. There are no facts in the second amended complaint that suggest that any other Starke County employee engaged in conduct similar to Officer Duff's alleged actions. He offers no facts that would adumbrate that such conduct was or would be recurring rather than idiosyncratic, or that it would be so common that the need for training would be plausibly viewed as obvious even without a similar constitutional violation. He merely restates the paths to municipal liability in conclusory fashion, and that isn't enough to allege a *Monell* claim. *See Iqbal*, 556 U.S. at 678.

To excuse this, Mr. Catalano relies on *Maldonado v. City of Hammond*, 2015 U.S. Dist. LEXIS 51278, 6-7 (N.D. Ind. Apr. 20, 2015). There, the plaintiff alleged that the city failed to properly train its officers on handling barking dogs during patrols and asserted a violation of Fourth Amendment rights when a Hammond police officer shot and killed a dog. *Id.* at 1-2. Judge Simon shrewdly viewed the encountering of barking dogs while on patrol as "common and ordinary"—effectively something that, based on judicial experience and common sense, a department officer would frequently, indeed recurringly, see or face. *Id.* at 6. Anyone who has walked a city's streets would know that there is nothing more ordinary that encountering a barking dog. Here however, nothing in the second amended complaint plausibly suggests such a recurring experience, or any other widespread custom of placing monitoring equipment all the while ignoring a person's bedsores or other medical conditions, much less one born of the county's deliberate indifference.

There is a bald statement, but nothing that makes the mere theoretical in any way plausible against the county. The court dismisses the *Monell* claim.

      C.  *Battery Claim (Officer Duff and Starke County).*

Officer Duff argues that he is immune to a battery claim in his individual capacity under the Indiana Tort Claims Act (ITCA). *See* Ind. Code § 34-13-3-5. The ITCA's purpose is to "ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000). "Because the ITCA is in derogation of the common law, [courts] construe it narrowly against the grant of immunity." *Mangold v. Ind. Dep't of Nat. Res.*, 756 N.E.2d 970, 975 (Ind. 2001). "The party seeking immunity bears the burden of establishing [his] conduct comes within the Act." *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 480 (Ind. 2003).

An officer working within the official scope of his employment is generally immune from tort liability. *See* Ind. Code § 34-13-3-5; *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014); *see, e.g., Smith v. Ind. Dep't of Corr.*, 871 N.E.2d 975, 986 (Ind. Ct. App. 2007) ("prison officers are shielded from liability in their official capacity under the [ITCA]"). "The grant of tort immunities to public employees involved in law enforcement is commonplace[.]" *Julian v. Hanna*, 732 F.3d 842, 848 (7th Cir. 2013); *accord Feldhake v. Buss*, 36 N.E.3d 1089, 1093 (Ind. Ct. App. 2015) ("In general, a plaintiff may not maintain an action against a government employee if that employee was acting within the scope of his employment."). Conduct falls within the scope of a person's employment when it is "of the same general nature as that authorized, or incidental to the conduct authorized." *Celebration Fireworks*, 727 N.E.2d at 453 (citation omitted).

8

To sue an officer or other governmental employee for a state tort personally, Mr. Catalano must "allege that an act or omission of the employee that causes a loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Ind. Code § 34-13-3-5(c). Merely alleging malice or wantonness in so many words isn't enough to survive because a pleading "must contain a reasonable factual basis supporting the allegations." Ind. Code § 34-13-3-5(c); *see also Iqbal*, 556 U.S. at 678.

Because of another immunity argument presented in briefing (more on that in a moment), the parties at times talk past each other on this precise issue of individual liability. On the one hand, the defense premises its motion on the allegation that Officer Duff was a Starke County employee; that seems conceded by everyone, but that alone fails to allege that the officer acted within the scope of that employment when this incident occurred. The defense then alludes to other allegations that it seems to construe as establishing his action within the scope of his employment, but the defense never cites any or identifies why this is so. In fairness, Mr. Catalano never counters this point head-on and just addresses the other immunity issue. So the court must walk through the operative pleading as it exists without this aid really from either side, ever mindful of the party bearing the burden of establishing immunity.

Mr. Catalano alleges that SCCC placed a larger monitor on him after his transfer, despite the obvious risks associated with his bedsores on his right ankle, and that Officer Duff refused to move the monitor even when Mr. Catalano warned him about the bedsores [20 ¶ 17-21]. To the extent that the defense invites the court to read into these allegations that Officer Duff was acting within the scope of his employment when he did so, and that could be one fair reading of

9

these allegations, he denies these allegations rather than admits he was so acting [32 ¶ 17-21]. And this isn't the only fair reading of these allegations based on Mr. Catalano's entire pleading and his right to plead in the alternative—namely, his later allegations that, when Officer Duff acted, that he acted willfully and wantonly [20 ¶ 41-42].

Plausible allegations of willful and wanton conduct may preserve a state tort claim against an officer in his or her individual capacity. *See* Ind. Code § 34-13-3-5(c)(4). Willful and wanton conduct under the ITCA requires "an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time," or "an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk." *Ellis v. City of Martinsville*, 940 N.E.2d 1197, 1204-05 (Ind. Ct. App. 2011). An officer "must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury" and "must have exhibited an indifference to the consequences of his conduct." *Id.* at 1205.

Mr. Catalano's battery claim against Officer Duff survives because he alleges facts that plausibly establish, at this early pleading stage, that the officer's conduct was willful and wanton. And this isn't a mere conclusion within the second amended complaint. As pleaded, Officer Duff knew about the obvious bedsores. Mr. Catalano warned him too. Officer Duff disregarded the bedsores by placing the monitor on his right ankle where the bedsores were. It requires no medical degree to appreciate that a larger device rubbing on bedsores reasonably could, as a natural and probable consequence, cause the bedsores to worsen, and create a situs for infection. Based on the second amended complaint, there was an alternative—placement on his left leg— but that option was disregarded.

This factual basis reasonably supports Mr. Catalano's claim that Officer Duff acted willfully and wantonly. *See id.* at 1204-05; Ind. Code § 34-13-3-5(c); *see also Iqbal*, 556 U.S. at 678. To the extent that the defense argues that Officer Duff had a legal privilege to place an ankle monitor on Mr. Catalano pursuant to a court order, that may have justified a touching, but not an intentional one that caused harm when, as pleaded, he disregarded an obvious medical condition and a perfectly acceptable alternative placement that would comply with that same order. Because Officer Duff bears the burden of establishing immunity for his conduct and has not met this burden, the court denies the motion to dismiss the battery claim against him in his individual capacity.

That leaves for discussion the battery claim against Starke County. Under the ITCA, "[a] government entity . . . is not liable if a loss results from . . . [t]he adoption and enforcement of or failure to adopt or enforce . . . a law (including rules and regulations) . . . unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(a)(8). Enforcement means "compelling or attempting to compel the obedience of another to laws, rules, or regulations, and the sanctioning or attempt to sanction a violation thereof." *St. Joseph Cnty. Police Dep't v. Shumaker*, 812 N.E.2d 1143, 1150 (2004) (emphasis omitted).

Starke County contends that it is immune from liability here because it was enforcing a law when it placed the monitor on Mr. Catalano pursuant to a court order. A central issue is whether a court order constitutes a "law" within the meaning of § 34-13-3-3(a)(8). Indiana courts have held that comparable orders are laws, including a trial court's bond order, *see Shumaker*, 812 N.E.2d at 1150, and a protective order pursuant to which an arrest is made, *see Miller v. City of*

11

*Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002). This court order, related to a revocation of probation, was a "law" for purposes of § 34-13-3-3(a)(8).

Mr. Catalano argues that his battery claim against Starke County is not barred because claims of excessive force fall outside the scope of law enforcement immunity under the ITCA. No matter the statute's language, not all acts of enforcement in the general sense are immune. *See Wilson v. Isaacs*, 929 N.E.2d 200, 203 (Ind. 2010) (no immunity for excessive force during arrest); *Patrick v. Miresso*, 848 N.E.2d 1083, 1084 (Ind. 2006) (no immunity for negligent operation of police vehicle during pursuit of fleeing suspect in violation of another statutory duty). If a battery based on unreasonable conduct cannot enjoy immunity, then a battery based on something more malicious cannot. *See, e.g., Jones v. Anderson*, 116 F.4th 669, 677 (7th Cir. 2024) (Eighth Amendment excessive force presupposes some malice or sadism); *Richman v. Sheahan*, 512 F.3d 876, 882 (7th Cir. 2008) (same). Mr. Catalano alleges excessive force—that the placement of an ankle monitor, as a condition of release and using the coercive effects of state custody, to maximize injury from obvious bedsores was excessive force [20 ¶ 29-30, 54]. For today, on this pleading, the court cannot say Starke County is immune under the ITCA to the extent a battery occurred because its employed officer used excessive force.

## CONCLUSION

For these reasons, the court GRANTS IN PART the partial motion to dismiss [30]— namely, the court DISMISSES all claims against SCCC and the *Monell* claim against Starke County and otherwise DENIES the motion. Mr. Catalano may proceed on his Eighth Amendment claim against Officer Duff and his state law battery claims against Officer Duff and Starke County.

SO ORDERED.

April 9, 2025　　　　　　　　　　　　　　s/ *Damon R. Leichty*
　　　　　　　　　　　　　　　　　　　　Judge, United States District Court